## WORTHINGTON v CITY OF KALAMAZOO

1. Constitutional Law—Right to Engage in Business.

   The Federal and state constitutions guarantee to citizens the general right to engage in any business which does not harm the public (US Const, Am XIV).

2. Constitutional Law—Preservation of Public Health, Safety, Morals or General Welfare—Fraud.

   The constitutional right to engage in business is subject to the sovereign police power of the state to preserve public health, safety, morals or general welfare and prevent fraud (US Const, Am XIV).

3. Constitutional Law—Police Power—Relation of Remedy—Public Purpose—Reasonableness.

   There must be a public welfare to be conserved or public wrong to be corrected in the exercise of police power, and also there must be a reasonable relation between the remedy adopted and the public purpose (US Const, Am XIV).

4. Constitutional Law—Arbitrary Statutes—Invasion of Property or Personal Rights.

   The primary determination of public need and character of remedy in the exercise of the police power is in the Legislature and its statute must be sustained unless the remedy provided therein is palpably unreasonable and arbitrary so as needlessly to invade property or personal rights as protected by the Constitution.

References for Points in Headnotes

[1] 16 Am Jur 2d, Constitutional Law § 371 *et seq.*

[2] 16 Am Jur 2d, Constitutional Law § 307 *et seq.*

[3] 16 Am Jur 2d, Constitutional Law §§ 279–283.

[4] 16 Am Jur 2d, Constitutional Law §§ 287, 290.

[5] 16 Am Jur 2d, Constitutional Law §§ 137–143, 151, 153, 172.

[6] 16 Am Jur 2d, Constitutional Law §§ 161, 174.

[7, 8] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 375, 433, 481.

[9–12] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 839–841.

5. CONSTITUTIONAL LAW—STATUTES—PRESUMPTIONS.

Presumption favors validity of a statute and if the relation between the statute and the public welfare is debatable the legislative judgment must be accepted.

6. CONSTITUTIONAL LAW—STATUTES—CLASSIFICATION—REASONABLE RELATIONSHIP—OBJECT OF LEGISLATION.

A legislative classification, to be acceptable under the Federal and state constitutions, must be reasonable, and it must bear a reasonable relation to the object of the legislation.

7. MUNICIPAL CORPORATIONS—POLICE POWERS—CITY STREETS—ORDINANCES—CONSISTENCY.

The use of city streets as places of business for private gain is a right that may be given or withheld by a city under its police powers; cities may regulate trades and occupations within their borders so long as the regulation is not inconsistent with state and Federal laws (Const 1963, art 7, § 29).

8. CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—PUBLIC WELFARE—STREETS—TOWING SERVICES—VIOLATION OF ORDINANCES —CAPABLE SERVICE—FINANCIAL RESPONSIBILITY.

There is a constitutionally reasonable relationship between the power of a city to preserve the public welfare and exercise reasonable control over its streets and the remedy of denying a license to operate a wrecker and towing service where the applicant has violated city ordinances or laws of the state which reflect unfavorably on his fitness to offer wrecker service, or failed to provide capable, qualified, reasonably prompt or courteous service, or is financially irresponsible, or declared a bankrupt.

9. MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—ORDINANCES— LICENSE DENIAL—CITY CLERK—STANDARDS.

A city ordinance authorizing a city clerk to decline, pending a decision of the city commission, to grant a license for a towing service upon receiving a written complaint of the police department or other reliable evidence of unfitness of the applicant sets forth sufficient standards to guide the clerk in the performance of his ministerial task.

10. CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—ORDINANCES— REASONABLE REMEDIES—AUTOMOBILES—REMOVAL—PROPERTY OWNERS—WRECKER SERVICES—PRIVATE PROPERTY.

It is not reasonable for a city ordinance to require a property owner to seek out the owner of a parked vehicle which is trespassing on his land before having the vehicle moved by a

towing service, nor may a city ordinance provide that a wrecker service be prohibited from parking on private property while waiting for employment without first obtaining police permission; these are not reasonable remedies for abuses by towing service operators.

11. MUNICIPAL CORPORATIONS—ORDINANCES—AUTOMOBILES—TOWING SERVICES—REGULATION—UNDUE BURDENS.

A city ordinance requiring a towing service to wait 24 hours and then seek police permission before removing a privately impounded vehicle from city limits does not unduly burden towing services having some or all of their storage areas outside of the city and is clearly within the city's authority to control towing within its boundaries.

12. MUNICIPAL CORPORATIONS—ORDINANCES—TOWING SERVICES—RATES—PROTECTION—STATUTES.

A city has the authority to require towing services to protect privately impounded vehicles from theft, vandalism or damage of any type and to set reasonable rates for towing (MCLA 117.4i[4]; MSA 5.2082[4]).

Appeal from Kalamazoo, Stuart R. Hoffius, J. Submitted June 2, 1976, at Grand Rapids. (Docket No. 24596.) Decided October 19, 1976.

Complaint by Clair H. Worthington against the City of Kalamazoo seeking to have a city ordinance regulating towing services declared unconstitutional. Judgment for defendant. Plaintiff appeals. Affirmed.

*Birkhold, Newland & Hills* (by *Edgar H. Hord),* for plaintiff.

*James F. Bishop,* City Attorney, and *Don M. Schmidt,* Deputy City Attorney, for defendant.

Before: DANHOF, C. J., and D. E. HOLBROOK and D. L. MUNRO,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

DANHOF, C. J. On December 4, 1974, the plaintiff brought the present action seeking to have the trial court set aside the towing and wrecker service ordinance of the defendant city, Kalamazoo ordinance 1036. In its judgment and order of May 30, 1975, the trial court upheld all but two portions of the ordinance attacked by the plaintiff. The plaintiff appeals as of right.

The trial was held in the present case on May 29, 1975. It appears from the record that the plaintiff operates a tow truck business located outside the city of Kalamazoo but licensed to operate within the city limits. He challenged portions of the defendant city's ordinance dealing with licensing of towing and wrecker service, regulating the towing of vehicles and regulating the fees allowable. The plaintiff averaged approximately $45 per car for private impounding in the years 1973 and 1974.

The defendant city offered testimony at the trial that showed some of the abuses present in the towing service supplied by the plaintiff that helped lead to the adoption of the ordinance by the city. Some of the witnesses indicated that they had been charged $68 or more for the towing and impounding fee when they had gone to pick up their car the same day. The witnesses indicated the plaintiff had used threatening and abusive language toward them and, in one instance, the plaintiff reportedly had a pistol in his belt when the man had gone to pick up his car. The city also offered the testimony of a traffic engineer who testified that the prohibition on patrolling private lots by the wrecker service would reduce the traffic congestion problems on the city's streets.

On appeal, the plaintiff challenges several sections of the defendant city's ordinance as violating

the due process clause and the equal protection clause under the Michigan and Federal Constitutions.[1]

The subject ordinance will be viewed by this Court under established constitutional principles.

The applicable principles under due process were set forth by the court in *Grocers Dairy Co v Department of Agriculture Director,* 377 Mich 71, 75–76; 138 NW2d 767 (1966):

"The correct principles were expressed by this Court in *Carolene Products Co. v Thomson,* 276 Mich 172, 178 [267 NW 608 (1936)]:

" 'The Constitution guarantees to citizens the general right to engage in any business which does not harm the public.[3] * * * The constitutional right to engage in business is subject to the sovereign police power of the State to preserve public health, safety, morals or general welfare and prevent fraud. In the exercise of the police power there must be *not only a public welfare to be conserved or public wrong to be corrected, but there must be also a reasonable relation between the remedy adopted and the public purpose.'* (Emphasis supplied.)

─────────

[3] *See* US Const, Am 14; Mich Const 1908, art 2, § 16. —REPORTER.

"The test of legitimacy of the exercise of the police power is 'the existence of a real and substantial relationship between the exercise of those powers in a particular manner in a given case and public health, safety, morals, or the general welfare'. *Roman Catholic Archbishop of Detroit v Village of Orchard Lake,* 333 Mich 389, 392 [53 NW2d 308 (1952)].

\* \* \*

"The principles involved are well settled. The Constitution guarantees to citizens the general right to engage in any business which does not harm the public. This constitutional right to engage in business is subject

─────────

[1] *See* US Const Am XIV: Const 1963, art 1, § 2 and § 17.

to the sovereign police power of the State to preserve public health, safety, morals, and public welfare.

"The primary determination of public need and character of remedy in the exercise of the police power is in the Legislature, and its statutes must be sustained unless the remedy is palpably unreasonable and arbitrary so as needlessly to invade property or personal rights as protected by the Constitution. *Carolene Products Co v Thomson, supra.*

"The presumption of the constitutionality of a statute favors validity and, if the relation between the statute and the public welfare is debatable, the legislative judgment must be accepted. *Kelley v Judge of Recorder's Court of Detroit,* 239 Mich 204 [214 NW 316 (1927)]."

The Supreme Court has used various approaches under the equal protection clause in recent years. See *e.g., Beauty Built Construction Corp v City of Warren,* 375 Mich 229, 235; 134 NW2d 214 (1965), and *Alexander v City of Detroit,* 392 Mich 30, 35–36; 219 NW2d 41 (1974). However, it appears that by disregarding the labels used, the test is that which is aptly stated by Justice Levin in *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 671; 232 NW2d 636 (1975):

"The classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation."

In addition to the general authority of a municipality to preserve public health, safety, morals, and public welfare, the cities have certain specified powers relevant here.

The cities are given the police power to exercise reasonable control over their streets. Const 1963, art 7, § 29.

The use of the streets as a place of business for

private gain is a right that may be given or withheld. *Michigan Towing Association, Inc v Detroit,* 370 Mich 440, 454; 122 NW2d 709 (1963).

Cities may also regulate trades and occupations within their boundaries so long as the regulation is not inconsistent with state and Federal laws. MCLA 117.4i(4); MSA 5.2082(4).

The plaintiff first attacks a portion of the ordinance that provides the bases for which a license to operate a wrecker and towing service may be granted, suspended, revoked or denied.[2]

We find the case law cited by the plaintiff which deals with the vagueness problem of criminal statutes and ordinances inapplicable to the present challenge because this section of the defendant city's ordinance does not provide for criminal sanctions, but only the granting or withholding of a license.

Rather, this section must be examined in light of the constitutional framework set forth above. The bases for denial of a license include, where the applicant has violated the ordinance in question, other ordinances of the defendant city or laws of the state "which reflect unfavorably on the fitness of the applicant * * * to offer wrecker service". Another basis is where the applicant fails to "provide capable, qualified, reasonably prompt or courteous wrecker service". Finally, if the applicant is "financially irresponsible" or is "declared a bankrupt" his license may be denied. The trial court found these bases to be reasonable and constitutional. We agree. There is a reasonable relationship between the power of the defendant city to

---

[2] Kalamazoo ordinances, § PL1216.4(a)(2), (3), and (5).

preserve the public welfare and exercise reasonable control over its streets and the remedy of denying a license to operate a wrecker and towing service where the applicant exhibits any of the above qualities. *Grocers Dairy Co v Department of Agriculture Director, supra.* Moreover, an examination of the record indicates that not only did the plaintiff fail to overcome the presumption of validity, but the proofs vividly illustrate the reasonableness of having such controls.

Plaintiff's contention that this section violates concepts of equal protection is groundless. We perceive no distinction between classes of persons which is not founded upon rationality. All applicants are expected to conform to identical standards, which standards are designed to protect the general financial welfare. Plaintiff has failed to meet the burden of establishing constitutional invalidity.

The plaintiff next challenges the section of the ordinance that provides that the city clerk may refuse to grant a license "upon receiving a written complaint of the Police Department or other reliable evidence".[3] The plaintiff argues there are no standards to guide the city clerk. This contention has no merit. This section must be read in conjunction with the preceding section just discussed. The city clerk has no authority here, but may only decline to do the ministerial task of issuing a license pending the decision of the city commission to grant or deny a license based upon the section set forth above.

The plaintiff also contends that parts of the section on "illegal towing" are invalid.

This section applies to a wrecker and towing service except where it "is acting as an agent in a

---

[3] Kalamazoo ordinances, § PL1216.4(b).

legal repossession of a vehicle".[4] MCLA 440.9503; MSA 19.9503 allows a party with a security interest to employ self-help to repossess a vehicle. The city was without authority to contravene the statute. Thus, it would appear that this was a reasonable class to exempt from the section of the ordinance on "illegal towing".

The trial court did hold a part of this section unconstitutional. That part prohibited a towing service from moving a vehicle from privately-owned land except where specifically requested by the owner of the property *and:*

"PROVIDED, that said owner or custodian of such private property has first furnished to said wrecker and towing service or operator a written and signed statement specifically identifying each vehicle and stating that every reasonable effort has been made to locate the owner or custodian of the vehicle; and stating any facts concerning the physical location of the vehicle which require the use of any accessory equipment or service (e.g. dolly, prehook-up winching)." Kalamazoo ordinances, § PL1216.8(b)(2).

The emphasis of this section is on the property owner. Were the court to uphold this section, the owner of the property, not the towing service, would have to go seek out the person who improperly parked on his private property. The interest here is not control of the city's streets, but rather control of private property. It is not reasonable to require the property owner, who is protecting his land against trespassers, to seek out the owner of the vehicle in order to correct the wrongs committed by some towing service operators. *Grocers Dairy Co v Department of Agriculture Director,*

---

[4] Kalamazoo ordinances, § PL1216.8.

*supra.* We agree with the trial court that this section is unconstitutional.

Similarly, the trial court held a part of the ordinance unconstitutional that prohibited a wrecker service from parking on private property while waiting for employment without first obtaining the consent of the police department.[5] This is not a reasonable remedy for the wrong sought to be corrected.[6] *Grocers Dairy Co v Department of Agriculture Director, supra.* We uphold the trial court's determination and strike from the last clause of Kalamazoo ordinances, § PL1216.8(1), the words "or private". The rest of the section dealing with soliciting business on the streets and cruising private property is constitutional.

Another subsection under "illegal towing" prohibits a wrecker and towing service from moving a vehicle to a place outside of the city, without the consent of the owner of the vehicle, except that after 24 hours the vehicle may be moved to a storage area with prior notification to and approval of the police department.[7]

The plaintiff argues that this discriminates against tow services outside the City of Kalamazoo. While some operators may be more strongly affected by this provision, it applies to all tow services equally and is not worded to unduly burden those operators having some or all of their storage areas outside of the city. It is clearly within the defendant city's authority to control towing within its boundaries.

The plaintiff also contends that the portions of

---

[5] Kalamazoo ordinances, § PL1216.8(j).

[6] Another reason that was stated in the preamble for enacting the ordinance was that "wreckers cruising on the streets, particularly on the heavily-traveled and congested streets create additional congestion and are a hazard to the safety of the public".

[7] Kalamazoo ordinances, § PL1216.8(c).

the ordinance that regulate the fees that may be charged and the prohibition on mileage charges are invalid.[8]

The case law cited by the plaintiff dealing with the setting of rates for public utilities is not applicable to the instant case. There is no case law cited that prevents a city from regulating the tow rates for wrecker services using its streets. The city has the authority to regulate this business and set reasonable rates unless otherwise prohibited. MCLA 117.4i(4); MSA 5.2082(4). Further, the excessive rates indicated on the record show the need for such regulation in order for the municipality to protect the welfare of its inhabitants. The testimony adduced at trial supports the conclusion that the rates set by the city are reasonable.

The plaintiff's contention that the ordinance was enacted without a public hearing with proper notice is without merit. The city did hold an informal meeting with wrecker and towing service operators in the city. The plaintiff did not attend. Further, there is no contention that the ordinance was enacted other than at a regular, public meeting of the city commission. The case law cited by the plaintiff dealing with administrative agencies does not apply here.

Finally, the plaintiff challenges the section of the ordinance that requires that the vehicles stored without the consent of the owner or direction of the police must be "protected from theft, vandalism or damage of any type".[9]

As indicated by the testimony at trial, the owners of towed vehicles need protection against damage to their cars, which they otherwise have no way of preventing and for which they may have no

---

[8] Kalamazoo ordinances, § PL1216.8(e), (f), (g), and (h).

[9] Kalamazoo ordinances, § PL1216.9.

real recourse against the wrecker service. This provision bears a reasonable relationship to the public welfare. *Grocers Dairy Co v Department of Agriculture Director, supra.*

Affirmed. Costs to the defendant.